FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 0 9 2004

at __5__ o'clock and __60__ min. __P__ M
WALTER A. Y. H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,      )    CR. NO. 02-00174 HG-02
                               )    CR. NO. 02-00542 HG
            Plaintiff,         )
                               )
      vs.                      )    **ORDER DENYING DEFENDANT'S**
                               )    **MOTION TO SUPPRESS EVIDENCE**
ISILELI LATU,                  )
                               )
            Defendant.         )
_____)

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Defendant has moved to suppress evidence allegedly obtained
in violation of Rule 41 of the Federal Rules of Criminal
Procedure.  Specifically, Defendant alleges that federal and
local law enforcement officers executed the search warrant for
his residence without ever providing a copy of it to Defendant or
any other resident of his house.  Defendant also asserts that he
never received a copy of the warrant authorizing his arrest.  For
the reasons set forth below, the Court DENIES Defendant's Motion
to Suppress Evidence.

## PROCEDURAL HISTORY

On April 22, 2002, a Criminal Complaint was filed against 21
individuals, including Defendant, in Crim. No. 02-00174 HG.  The
Criminal Complaint alleged that the 21 named defendants had
conspired to distribute and to possess with intent to distribute
more than 50 grams of methamphetamine and more than 500 grams of
cocaine.

Warrants authorizing Defendant's arrest and the search of his residence were issued on April 22, and 23, 2002, respectively.  Both warrants were executed on April 24, 2002.

On May 1, 2002, a federal grand jury returned a 37-count Indictment against 10 of the individuals named in the Criminal Complaint, including Defendant.  Defendant was charged with Counts 1, 14, 18, 28, 36, and 37.  Count 1 charged the defendants with conspiring to distribute and to possess with intent to distribute more than 50 grams of methamphetamine and more than 500 grams of cocaine, in violation of 21 U.S.C. § 846.  Count 36 charged Defendant with possessing with intent to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1).  Counts 14, 18, and 28 charged Defendant with using a communications facility (telephone) to facilitate the drug distribution conspiracy charged in Count 1, in violation of 21 U.S.C. § 843(b).  Count 37 sought the forfeiture of any property constituting or derived from proceeds resulting from the offenses alleged in Count 1.

On December 18, 2002, Defendant was charged in a second Indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2).  The Indictment was filed in a separate case against Defendant, docketed as Crim. No. 02-00542 SOM.

On February 3, 2003, pursuant to a plea agreement entered

into and filed on the same date, Defendant pleaded guilty to Count 1 of the Indictment filed on May 1, 2002 in Crim. No. 02-00174 HG, which charged Defendant and nine others with various drug-related crimes. The Government agreed to move for dismissal of the remaining counts of the Indictment as to Defendant after sentencing. The Court accepted Defendant's guilty plea and adjudicated Defendant guilty on February 27, 2003.

On February 18, 2003, pursuant to a second plea agreement entered into and filed on the same date, Defendant pleaded guilty to the single count of the Indictment filed on December 18, 2002 in Crim. No. 02-00542 SOM, which charged Defendant with being a felon in possession of a firearm. The Court accepted Defendant's guilty plea and adjudicated Defendant guilty on the same date.

On May 12, 2003, Crim. No. 02-00174 HG and Crim. No. 02-00542 SOM were consolidated for sentencing.

On July 3, 2003, five months after entering his second guilty plea, and over a year after his arrest, Defendant filed a motion to continue sentencing.

On July 7, 2003, the Court issued a Minute Order granting Defendant's motion to continue sentencing and ordered Defendant's sentencing continued until September 15, 2003.

On September 12, 2003, Defendant filed a second motion to continue sentencing and also moved to withdraw his guilty pleas.

On September 15, 2003, the Court heard oral argument with

3

respect to Defendant's motion to continue sentencing and withdraw his guilty pleas.  The Court once again granted Defendant's request to continue sentencing.  Unclear as to Defendant's theory for withdrawing his guilty pleas, the Court ordered Defendant to file affidavits and/or declarations in support of his request to withdraw his guilty pleas by October 20, 2003 and ordered the Government to provide Defendant with a copy of any receipt for service of the search warrant on Defendant's home.  The Court set an evidentiary hearing for October 27, 2003.

On September 19, 2003, the Government filed a pleading entitled "United States' Position on Service of Search Warrant on Resident at 940 Ehoeho Street Haliimaile, Hawaii, on April 24, 2002."  Attached as Exhibit 1 to the Government's September 19, 2003 pleading was a Declaration of FBI Special Agent Lawrence J. Futa, dated September 19, 2003.  Agent Futa's Declaration described and incorporated by reference two documents labeled Exhibits A and B.  Exhibit A was a photocopy of a photograph depicting copies of the search warrant and receipt on a table with a unique tablecloth in the Latu residence.  Exhibit B was a copy of the receipt for seized property signed by Agent Futa and Defendant's sister, Mele Tasia Latu.

On October 27, 2003, a hearing was held on Defendant's motion to withdraw his guilty pleas.  Defendant, unprepared to go forward, made an oral motion for continuance of sentencing to

4

allow for further investigation on the issue of service of the search warrant, which the Court granted. The Court again continued Defendant's sentencing, setting a new sentencing date of November 6, 2003. Still unclear as to the basis of Defendant's motion, the Court once again ordered Defendant to file an affidavit and/or declaration in support of his motion to withdraw his guilty pleas by October 31, 2003.

On October 31, 2003, Defendant filed a pleading entitled "Declaration of Counsel and Affidavit of Mele Tasia Malafu."[1]

On November 6, 2003, further hearing on Defendant's motion to withdraw his guilty pleas was held. The Court continued Defendant's sentencing and set an evidentiary hearing on Defendant's motion to withdraw his guilty pleas for December 15, 2003.

On December 15, 2003, an evidentiary hearing on Defendant's motion to withdraw his guilty pleas was held. Defendant offered the testimony of his sister, Mele Tasia Latu, who was present during the execution of the arrest and search warrants of Defendant and the Latu residence on April 24, 2002. The

---

[1] Mele Tasia Malafu is Defendant's sister. She was referred to as Mele Tasia Latu in this Court's February 5, 2004 Order Granting Defendant's motion to withdraw his guilty pleas. "Latu" is her maiden name and "Malafu" is her married name. The parties have used both names in their pleadings. For consistency with the Court's February 5, 2004 Order, in this Order, the Court refers to her by her maiden name, "Mele Tasia Latu" or "Ms. Latu".

Government offered the testimony of Special Agent Lawrence J. Futa of the Federal Bureau of Investigation ("FBI"), who led the team responsible for executing the arrest warrant for Defendant and the search warrant for the Latu residence.  The Court took the matter under submission.

On December 17, 2003, the Court, in a Minute Order, ordered the parties to file supplemental memoranda outlining their positions with respect to the Government's alleged failure to provide Defendant or any other resident of the Latu residence with a copy of the search warrant prior to searching the residence.

On December 23, 2003, the Government filed a Memorandum Re: Search of Defendant's Residence at 940 Ehoeho Street, Haliimaile, Hawaii.

On January 13, 2004, Defendant filed a Response to the Government's December 23, 2003 memorandum.

On February 5, 2004, the Court filed an Order Granting Defendant's motion to withdraw his guilty pleas.

On February 26, 2004, Defendant filed a Motion to Suppress Evidence.

On March 2, 2004 the Government filed a memorandum responding to Defendant's Motion to Suppress Evidence.

On March 5, 2004, Defendant's Motion to Suppress Evidence came on for hearing.  The Government offered as evidence a

photograph depicting the search warrant and receipt for seized property on a table covered by a unique tablecloth, a photocopy of which had been submitted previously on September 19, 2003, along with the Government's pleading entitled "United States' Position on Service of Search Warrant on Resident at 940 Ehoeho Street Haliimaile, Hawaii, on April 24, 2002."  The Government also offered the testimony of FBI Special Agent Lawrence Futa; Agent Gordon Horiye of the Federal Bureau of Alcohol, Tobacco, Firearms, and Explosives; and Maui County Police Officers Greg Alejo and Mark Vickers.  Defendant offered no testimony or evidence but asked the Court to consider the testimony offered by Defendant's sister, Mele Tasia Latu, at the December 15, 2003 evidentiary hearing on Defendant's motion to withdraw his guilty pleas.

## UNDISPUTED FACTS

Testimony given during the December 15, 2003 evidentiary hearing on Defendant's motion to withdraw his guilty pleas and the March 5, 2004 hearing on Defendant's Motion to Suppress Evidence, as well as evidence submitted with the parties' pleadings and at the hearings, established the following facts:

On April 24, 2002, agents from the Federal Bureau of Investigation ("FBI"), the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF&E"), and the former Immigration and Naturalization Service ("INS"), as well as officers from the Maui

Police Department, executed several search and arrest warrants on
Maui, including multiple warrants at two residences located on
Ehoeho Street in the town of Haliimaile.  Two warrants were
executed at Defendant's residence, 940 Ehoeho Street in
Haliimaile: one warrant authorized the search of the residence
and the other authorized the arrest of Defendant.  A third
warrant authorized the search of another residence up the street
from Defendant's home.  In light of the multiple warrants being
executed on Maui on the same date, the search teams needed to
share resources, including personnel.

The arrest warrant for Defendant was issued on April 22,
2002, upon the Government's filing of a Criminal Complaint on the
same date.  The Complaint named Defendant among 21 individuals
alleged to have conspired to distribute and to possess with
intent to distribute more than 50 grams of methamphetamine and
more than 500 grams of cocaine, in violation of 21 U.S.C. § 846.

The search warrant for Defendant's residence was issued on
April 23, 2002.  It was one of eight warrants issued upon the
filing of an Application and Affidavit seeking warrants to search
eight residences, six of which were located on Maui.

The next day, April 24, 2004, the arrest warrant for
Defendant and the search warrant for Defendant's residence were
executed between the morning and early afternoon hours.  At the
time of the execution of the two warrants, the residence was

8

occupied by Defendant and eleven of Defendant's relatives.

FBI Special Agent Lawrence Futa was the team leader for the execution of the two warrants at Defendant's residence. He and his team initially entered the residence between 6:00 and 6:30 a.m.: the team knocked and announced their presence, entered the premises to secure it and execute the arrest warrant for Defendant, and announced that they were going to execute a search warrant. In light of Defendant's criminal history and the nature of the crime charged, Agent Futa and the other law enforcement officers considered Defendant to be a dangerous person and believed that he might be armed. Out of concern for the safety of the agents, police officers, and civilians present during the search, the arresting officers escorted Defendant outside of the residence immediately upon his arrest. Officers advised Defendant that he was under arrest pursuant to a federal arrest warrant related to drug charges and that a search warrant would be executed at his residence. Defendant did not request to see the warrant authorizing his arrest.

Officers estimated that Defendant was arrested and escorted outside of the residence sometime between 6:30 and 7:00 a.m. Once outside, officers placed Defendant in the rear seat of a Maui County patrol vehicle, where Defendant waited to be transported to the police station for processing. Officer Mark Vickers of the Maui County Police Department remained with

Defendant while other law enforcement officers executed the
search warrant at the residence up the street from Defendant's
home.  Officer Vickers waited, before transporting Defendant, to
determine whether he was needed to transport any other
individuals arrested during the search of the residence up the
street from Defendant's home, intending to make a single
transport of any individuals arrested during the execution of the
warrants at the two residences on Ehoeho Street.  After waiting
for approximately an hour-and-a-half to two hours, Officer
Vickers transported Defendant to the police station for
processing, sometime between 8:00 and 9:00 a.m.

       As indicated above, although the Latu residence was secured
and Defendant was arrested promptly upon the officers' initial
entry into the residence, sometime between 6:00 and 7:00 a.m.,
the search warrant for the Latu residence was not executed until
after officers completed the search of another residence up the
street from Defendant's home.  Officers estimated that the search
of the Latu residence began sometime between 10:00 and 11:00 a.m.
and lasted for approximately two hours.

       On or about May 21, 2002, following Defendant's arrest and
indictment on the charges in Crim. No. 02-00174, the Government
provided Defendant, through his counsel, with a copy of the
search warrant and affidavit in support thereof, along with other
discovery pursuant to Fed. R. Crim. P. 16.  (Gov. Mem. Re: Mot.

10

to Suppress Evidence Seized From Def.'s Residence, Ex. 3.)

### DISPUTED FACTS

In addition to facts upon which the parties agree, there was inconsistent testimony given regarding whether Defendant or any other resident of the home requested a copy of the search warrant and whether a copy of the search warrant was ever provided to Defendant or another resident of the home.

Having considered the testimony and evidence provided by both Defendant and the Government, the Court finds credible the testimony and physical evidence presented by FBI Agent Futa, ATF&E Agent Horiye; and Maui County Police Officers Alejo and Vickers.

Agent Futa, who led the initial entry into the residence, testified that at the conclusion of the search, he presented Defendant's sister, Mele Tasia Latu, with a copy of the receipt for the seized items, explained to her what had been taken, and asked whether she wanted to see any of the seized items.  He testified that she declined his offer and signed the receipt, a copy of which Agent Futa provided to her.  Ms. Latu acknowledged signing the receipt.  Agent Futa testified that he then informed Ms. Latu that he would leave copies of the receipt and search warrant on the dining room table.  A photograph submitted by the Government as evidence depicts the two documents on a table covered by a distinctive tablecloth, which, Ms. Latu

acknowledged, appeared to be the dining room table in the Latu residence. The photograph corroborates Agent Futa's testimony that he left copies of both documents on the dining room table in the residence.

Agent Futa testified that Defendant did not ask any questions about the search warrant. He testified that he executed the search in accordance with his understanding of the law at the time. Agent Futa acknowledged that Defendant was not provided with a copy of the search warrant at the time of the search and testified that if Defendant had asked for a copy of it, he would have provided Defendant with a copy. Agent Futa stated his belief that he was required to present a copy of the search warrant to a responsible party prior to the completion of the execution of the search, or, if that was not possible, to leave a copy of the warrant and receipt for the seized items at the searched residence. He explained that at the time of the initial entry into the residence, he and the other members of his search team were concerned primarily with ensuring that the premises were secure and that Defendant was removed from the home.

The Court also heard testimony from Officer Greg Alejo of the Maui County Police Department, who participated in the arrest of Defendant. At the March 5, 2004 hearing, Officer Alejo testified that Defendant did not ask him any questions regarding

12

his arrest or the search of his residence, and that Defendant did not request to see the search or arrest warrant.

Maui County Police Officer Mark Vickers was responsible for transporting individuals arrested during the execution of the search warrants in Haliimaile on April 24, 2002. At the March 5, 2004 hearing, Officer Vickers testified that he remained with Defendant during the hour-and-a-half to two hours that transpired between Defendant's arrest and ultimate transportation to the police station. Officer Vickers testified that Defendant did not ask him to see the search warrant or arrest warrant. He also testified that none of the other occupants asked him to see the search warrant.

Agent Gordon Horiye of the Federal Bureau of Alcohol, Tobacco, Firearms, and Explosives was a member of the entry team and was responsible for maintaining the security of the residence during the period of time between the initial entry and securing of the premises and the ultimate search of the premises, a few hours later. At the March 5, 2004 hearing, Agent Horiye testified that during the period of time that he observed the occupants of the house, none of the occupants asked him to see the arrest or search warrants. He further testified that he did not hear anyone ask any other federal agent or police officer to see the search warrant.

Defendant maintains that no copy of the search warrant was provided to any resident of the Latu home prior to, during, or at the conclusion of the execution of the search. Defendant also claims that he, his sister, and his cousin each requested a copy of the search warrant during the execution of the search on April 24, 2002. Defendant does not allege that he requested to see the warrant authorizing his arrest.

The Court is faced with the distinctive photograph of the warrant and signed receipt on the unique tablecloth in the Latu residence and the testimony of the four law enforcement officers. In spite of the multiple continuances granted to Defendant to allow for further investigation of the circumstances surrounding the service of the search warrant, Defendant offered only the testimony of his sister, Mele Tasia Latu, in support of his version of the facts.

At the December 15, 2003 hearing on Defendant's motion to withdraw his guilty pleas, Ms. Latu acknowledged having viewed the above-mentioned photograph depicting the warrant and signed receipt form on a table covered by the unique tablecloth. She further acknowledged, during both direct and cross-examination, that the table depicted in the photograph looked like the table in the dining room of her home. Despite such acknowledgments, Ms. Latu maintained that she did not see or receive the search warrant.

Ms. Latu also testified that following the entry of law enforcement officers into her home, she; her cousin, Matile Kafoa; and Defendant each asked for the search warrant. No other testimony, affidavits, or declarations, were offered by Defendant to corroborate Ms. Latu's assertion that such requests were made. Ms. Latu's assertion was contradicted by the testimony of four separate law enforcement officers.

In sum, Defendant has failed to present credible evidence in support of his version of the facts. The credible evidence supports the Government's assertion that a copy of the search warrant was shown to Ms. Latu and left at the Latu residence at the conclusion of the execution of the search. Ms. Latu's claim that she never saw or received a copy of the warrant is belied by the testimony of Agent Futa and the photograph of the warrant sitting on a table with a unique tablecloth in the Latu home. Despite the time granted Defendant for further investigation, Defendant has offered no evidence to challenge the credibility of Agent Futa's testimony, other than the inconsistent and uncorroborated statements of Ms. Latu.

The credible evidence also supports the Government's assertion that neither Ms. Latu, her cousin, nor Defendant asked any of the law enforcement officers for a copy of the search warrant.

The Court notes that in addition to the substantial evidence contradicting Ms. Latu's testimony, there does not appear to be any logical reason to discredit Agent Futa's statement that had Defendant requested to see the search warrant, a copy would have been provided to him.  Defendant has not challenged the legality of the search warrant itself.  The Government had nothing to gain by denying a request to see the warrant.  Defendant, however, has much to gain by asserting at this late stage that he and others requested the warrant and were denied their requests.  Defendant did not even allege a violation of Fed. R. Crim. P. 41 until February of 2004, nearly two years after Defendant's initial arrest and receipt, thereafter, of a copy of the search warrant through his counsel, and approximately one year after Defendant entered his first guilty plea.

Finally, there is no need to make a credibility determination regarding whether Defendant requested to see the warrant authorizing his arrest: Defendant has not presented any evidence or argument that he made such a request and the Government has offered the testimony of multiple law enforcement officers to establish that Defendant did not request to see the arrest warrant.

## **Findings of Fact**

Having considered all of the testimony and physical evidence presented to the Court, the Court makes the following findings

regarding the circumstances surrounding the execution of the search and arrest warrants on April 24, 2002:

Upon arriving at the Latu residence on the morning of April 24, 2002, law enforcement officers promptly arrested Defendant, advised him that he was under arrest pursuant to a federal arrest warrant related to drug charges, removed him from the premises, and secured the premises.  Defendant did not request to see a copy of the warrant authorizing his arrest.

Following the arrest of Defendant and securing of the Latu residence, and prior to the execution of the search warrant at the Latu residence, members of the search team executed a search warrant for another residence on the same street as the Latu residence.  Upon the conclusion of the search of the other residence on Ehoeho Street, the officers returned to execute the search warrant for the Latu residence.

At the conclusion of the execution of the search of the Latu residence, a copy of the search warrant was shown to Defendant's sister, Mele Tasia Latu, she signed the receipt for items seized, and copies of both documents were left at the Latu residence as depicted in the Government's photo.

The Court finds that neither Ms. Latu, her cousin, nor Defendant asked any of the law enforcement officers for a copy of the search warrant.

At the onset of the instant prosecution, Defendant, through

his counsel, was provided with a copy of the search warrant.

## Conclusions of Law

A.    **Propriety of the execution of the arrest warrant**

Although Defendant asserts in his motion to suppress that he was never provided with a copy of the warrant for his arrest, it is unclear whether Defendant alleges a resultant violation of law or whether Defendant's assertion is simply a statement of fact. Defendant does not appear to be challenging the validity of his arrest, nor does Defendant appear to be asserting the illogical and legally unsupported argument that failure to serve an arrest warrant requires suppression of evidence seized as a result of the execution of a separate and valid search warrant.

Assuming, arguendo, Defendant is attempting to characterize as a violation of law the fact that he did not receive a copy of his arrest warrant, the Court notes that such a characterization is unsupported by the relevant law and the facts of this case. Rule 4(c)(3)(A) of the Federal Rules of Criminal Procedure provides that an officer possessing an arrest warrant must show it to the defendant upon his arrest, or, if the officer does not possess the warrant, the officer must inform the defendant of the warrant's existence and of the offense charged. The Rule further requires that if the defendant requests to see the arrest warrant, the officer must show it to the defendant as soon as possible. Fed. R. Crim. P. 9(c)(1)(A) provides that an arrest

18

warrant must be executed as provided in Rule 4(c)(1), (2), and (3).

No testimony or other evidence has been presented, nor any argument made, regarding the issue of whether law enforcement officers possessed the arrest warrant at the time they arrested Defendant on April 24, 2002. It is clear, however, that upon arresting Defendant, officers advised Defendant that he was under arrest pursuant to a federal arrest warrant and that the warrant was based on drug charges. The evidence before the Court also establishes that Defendant did not ask to see the warrant authorizing his arrest.

The Court finds that the law enforcement officers' statement to Defendant that he was under arrest pursuant to a federal arrest warrant related to drug charges fulfilled the requirements of the federal rules governing execution of an arrest warrant. See Fed. R. Crim P. 4(c)(3)(A) and 9(c)(1)(A); see also, e.g., United States v. Buckner, 717 F.2d 297, 301 (6th Cir. 1983) (holding that where law enforcement officers had reliable knowledge of a bench warrant for the defendant's arrest, "[t]he fact that the officers did not have the arrest warrant in hand is of no consequence.") (citations omitted); United States v. Turcotte, 558 F.2d 893, 896 (8th Cir. 1977) ("We find no merit to appellant's contention that his arrest was unlawful due to the failure of the arresting officer to serve him with a copy of the

arrest warrant.") (citation omitted).

Although a different conclusion may have been reached had the evidence established that law enforcement officers possessed the arrest warrant at the time of Defendant's arrest, the Court will not infer facts to support a finding that law enforcement officers violated the law in the absence of any basis to support such an inference. Fed. R. Crim P. 4(c)(3)(A) provides that if an officer does not possess the arrest warrant at the time of the defendant's arrest, the officer must inform the defendant of the warrant's existence and of the offense charged. The evidence establishes that law enforcement officers informed Defendant that he was being arrested pursuant to a federal arrest warrant and that the warrant was based on drug charges. In the absence of any evidence to find otherwise, the Court concludes that the officers complied with the rule.

Finally, the Court notes that even if Defendant had established a violation of Rule 4 and/or Rule 9 of the Federal Rules of Criminal Procedure, Defendant has offered no legal or logical basis for remedying such a violation by suppressing evidence seized as a result of the execution of a separate, valid search warrant.

To the extent that Defendant is attempting to challenge the validity of his arrest or seek suppression of evidence on the basis of the fact that he did not receive a copy of his arrest

warrant, the Court DENIES Defendant's motion on such bases.

**B.    <u>Violation of Rule 41</u>**

With respect to the search of Defendant's residence, the governing rule was Rule 41(f)(3) of the Federal Rules of Criminal Procedure.  The rule requires that the officer(s) executing a search warrant either (A) give a copy of the warrant and a receipt of the property taken to the person from whom, or from whose premises, the property was taken; or (B) leave a copy of the warrant and receipt at the place where the officer took the property.  The United States Court of Appeals for the Ninth Circuit has interpreted the language of Rule 41(f)(3) to mean that the executing officers must serve a copy of the search warrant "<u>at the outset</u> of the search on persons present at the search of their premises", absent exigent circumstances.  <u>United States v. Gantt</u>, 194 F.3d 987, 1001 (9th Cir. 1999) (emphasis added).[2]  It is clear that law enforcement officers did not provide a resident with a copy of the search warrant until the completion of the search at 940 Ehoeho Street on April 24, 2002.  The officers failed to comply with the requirements of Rule 41(f), as articulated by the Ninth Circuit in <u>Gantt</u>.  The question before the Court is whether the circumstances here

---

[2] In <u>Gantt</u>, which was decided in 1999, the Ninth Circuit discussed the service requirements of Rule 41(d) of the Federal Rules of Criminal Procedure.  The Rules have since been amended and the service requirments addressed by the Ninth Circuit in <u>Gantt</u> currently are set forth in Rule 41(f)(3).

require that the evidence seized be suppressed.

## C.   **No exigent circumstances**

In the instant case, the evidence establishes that law
enforcement officers considered Defendant to be a dangerous
person and believed that he might be armed in light of his
criminal history and the nature of the crime charged.  Concerns
for the safety of the agents, police officers, and civilians
present during the search clearly justified the arresting
officers' decision to escort Defendant outside of the residence
prior to executing the search.  See id. at 1002.  Such concerns,
however, did not establish exigent circumstances justifying the
officers' failure to provide Defendant with a copy of the warrant
once he had been removed from the premises.  See id. at 1002-03.

In Gantt, the Ninth Circuit held that exigent circumstances
did not exist to justify the failure of FBI agents to show the
defendant the warrant authorizing the search of her apartment,
even though agents had removed her from the apartment prior to
searching it because they believed that the defendant was prone
to violence.  Id. at 1002.  As in Gantt, the officers here
clearly were justified in removing Defendant from his residence
prior to searching the premises; however, exigent circumstances
did not exist to justify non-compliance with Rule 41(f).

D.  **Suppression of evidence seized in violation of Rule 41**

While reading Rule 41 to require service of a search warrant on a resident present at the premises to be searched, at the outset of a search, the Ninth Circuit, in Gantt, explained that violations of Rule 41(f) usually do not demand suppression. Id. at 1005. Violations of Rule 41 require automatic suppression of evidence only if the violation is fundamental, rather than merely technical. United States v. Johnson, 641 F.2d 652, 656 (9th Cir. 1981) (en banc). A Rule 41 violation is not "fundamental" unless it also involves a constitutional violation. Id.

Where there is a technical violation, Rule 41 requires suppression only if there was an intentional and deliberate disregard of the rule or if the defendant was prejudiced by the violation. Gantt, 194 F.3d at 1005 (citing United States v. Negrete-Gonzales, 966 F.2d 1277, 1283 (9th Cir. 1992)); Johnson, 641 F.2d at 656. The Ninth Circuit has held that a defendant may be prejudiced by a technical violation of Rule 41 where, if the Rule had been followed, the search would not have occurred or would have been less abrasive or intrusive. Negrete-Gonzales, 966 F.2d at 1283; Johnson, 641 F.2d at 656.

1.  **Violation of Rule 41 in this case was technical rather than fundamental**

Although Defendant asserts in his motion that the Government's violation of Rule 41 in the instant case violated

Defendant's right to privacy as guaranteed by the Fourth Amendment, Defendant fails to articulate any specific, constitutional violation. The search of Defendant's residence was executed pursuant to a warrant. Defendant has not challenged the legality of the warrant itself, nor has Defendant suggested that the search exceeded the scope of the warrant. The only allegation in Defendant's motion to suppress is that the Government failed to provide Defendant with a copy of the search warrant at the outset of the warrant's execution. Such a failure constitutes a violation of Rule 41 of the Federal Rules of Criminal Procedure, but not of the U.S. Constitution. Defendant, therefore, has alleged a technical violation of Rule 41.

As the Court is faced with a technical, rather than fundamental, violation of Rule 41, suppression is appropriate only if the failure of law enforcement officers to show Defendant the warrant at the outset of the search was in deliberate disregard of Rule 41, or if Defendant was prejudiced by the violation.

### 2.    Deliberate disregard of Rule 41

In Gantt, the Ninth Circuit concluded that suppression was justified because federal agents had deliberately violated Rule 41. 194 F.3d at 1005. In so concluding, the Court found that "[t]he agents failed to show Gantt the complete warrant even after she asked to see it. The government has provided no

24

explanation or justification for the agents' failure." <u>Id.</u>

With respect to the instant case, there is no credible evidence that law enforcement officers deliberately disregarded Rule 41. The credible evidence indicates that Agent Futa, the leader of the search team, mistakenly believed that leaving a copy of the search warrant at the searched residence at the conclusion of the search was sufficient to comply with the rule. Although incorrect under the law of this Circuit, Agent Futa's belief as to what he was required to do to comply with Rule 41 was understandable in light of the language of the rule itself. <u>See</u> Fed. R. Crim. P. 41(f)(3) ("The officer executing the warrant must (A) give a copy of the warrant and receipt for the property taken to the person from whom or from whose premises the property was taken; or (B) leave a copy of the warrant and receipt at the place where the officer took the property.").

In addition, there is no credible evidence that any of the residents asked for a copy of the search warrant. Instead, four separate law enforcement authorities testified that no such requests were made. Agent Futa testified that had a request for a copy of the warrant been made, he would have complied with the request. No credible evidence has been offered to contradict such assertions.

The Court finds that the failure of law enforcement officers to provide a resident of the searched premises with a copy of the

search warrant at the outset of the search was not the result of
the officers' deliberate disregard of Rule 41, but rather a
consequence of the officers' ignorance of the full requirements
of the rule.

### 3.   **Prejudice**

As the basis for his motion to suppress, Defendant has
argued that the Government deliberately disregarded Rule 41,
rather than assert that he was prejudiced by the Government's
conduct.  Defendant's discussion of prejudice is limited to
general and hypothetical references to the "inherent prejudices"
associated with Rule 41 violations.  In particular, Defendant
points to the potential violation of privacy rights that may
occur when a warrant is not provided to the residents of a home
being searched and to the possibility of people being physically
endangered or denied the opportunity to protect their valuables
due to their ignorance of the parameters of the search warrant.
Despite such generalized, hypothetical arguments, Defendant does
not assert that a resident of his home actually was physically
endangered; nor does Defendant allege that the search of his
residence exceeded the parameters of the warrant.  Defendant also
does not argue that the search of his residence would not have
occurred or would have been less intrusive absent the officers'
technical error.  See Negrete-Gonzales, 966 F.2d at 1283.  Beyond
Defendant's unsupported allegation that the non-compliance of law

enforcement officers with Rule 41(f) in this case violated Defendant's Fourth Amendment right to privacy, Defendant has not raised a constitutional challenge to the warrant's execution, nor has Defendant challenged the constitutionality of the warrant itself.  Defendant also has not alleged that the execution of the search warrant was unusually abrasive or intrusive; nor has Defendant alleged that compliance with Rule 41 would have altered the abrasiveness or intrusiveness of the search as it was executed.  In sum, Defendant has failed to establish that he was prejudiced by the failure of law enforcement officers to comply with Rule 41(f) in executing the warrant to search his residence.

**Summary of the Court's Findings of Fact and Conclusions of Law**

The Court, having considered all of the testimony, affidavits, declarations, and physical evidence presented regarding the circumstances surrounding the execution of the search warrant at Defendant's home on April 24, 2002, as well as the applicable law, has reached the following findings and conclusions:

On April 24, 2002, federal and local law enforcement officers executed several search and arrest warrants on Maui. Among the warrants executed was a search warrant for Defendant's residence located at 940 Ehoeho Street in the town of Haliimaile, and a warrant authorizing Defendant's arrest.  Around the same time, a separate search warrant was executed at another home in

27

Haliimaile, up the street from Defendant's residence.

In the process of securing Defendant's residence prior to executing the search warrant there, law enforcement officers properly removed Defendant immediately upon arresting him, and advised Defendant that he was under arrest pursuant to a federal arrest warrant related to drug charges.

Defendant did not request to see a copy of the warrant authorizing his arrest.

The execution of the arrest warrant conformed to the requirements of the Federal Rules of Criminal Procedure.

A copy of the search warrant was not provided to Defendant or another resident of the Latu home at the outset of the search.

At no point during the securing of the premises, arresting of Defendant, or searching of the premises did Defendant's sister Mele Tasia Latu, her cousin, or Defendant ask any of the law enforcement officers for a copy of the warrant.

At the conclusion of the execution of the search of Defendant's residence, a copy of the search warrant was shown to Defendant's sister, Mele Tasia Latu; Ms. Latu signed the receipt for seized property; and copies of the signed receipt and search warrant were left on a dining room table with a distinctive tablecloth in the Latu residence, as depicted in the Government's photo.

28

In addition, at the onset of the instant case, the Government provided Defendant, through his counsel, a copy of the search warrant.

In executing the search warrant at the Latu residence, law enforcement officers violated the technical requirements of Fed. R. Crim. P. 41, as articulated by the United States Court of Appeals for the Ninth Circuit in United States v. Gantt, 194 F.3d 987, 1001 (9th Cir. 1999). Specifically, the officers failed to serve a copy of the search warrant on a resident present at the outset of the search.

Although safety concerns justified the removal of Defendant from the residence prior to searching the premises, such concerns did not create exigent circumstances to justify non-compliance with Rule 41.

Except for the officers' technical non-compliance with Rule 41, the execution of the search warrant for Defendant's residence conformed to the requirements of the law. In addition, the warrant itself was proper in form and substance.

A violation of Rule 41 does not require automatic suppression of evidence unless the violation is fundamental, rather than merely technical. Johnson, 641 F.2d at 656. A Rule 41 violation is not "fundamental" unless it also involves a constitutional violation. Id.

Evidence obtained as a result of a merely technical violation of Rule 41 must be suppressed only if law enforcement officers intentionally and deliberately disregarded the rule, or if the defendant was prejudiced by the violation.  <u>Gantt</u>, 194 F.3d at 1005.

With respect to the execution of the search warrant at Defendant's residence, law enforcement officers neither intentionally nor deliberately disregarded the requirements of Rule 41.  FBI Agent Futa, who led the search team, reasonably, but mistakenly, believed that officers were required to present a copy of the search warrant to a responsible party prior to the completion of the execution of the search, or, if that was not possible, to leave a copy of the warrant and receipt for the seized items at the searched residence.  At the time of the initial entry into Defendant's residence, the members of the search team were concerned primarily with ensuring that the premises were secure and that Defendant was removed from the residence.  Had Defendant requested to see the search warrant, a copy would have been provided.

Defendant has not suffered any prejudice as a result of the officers' technical violation of Rule 41.

30

**CONCLUSION**

In accordance with the foregoing, Defendant's Motion to Suppress Evidence is DENIED.

IT IS SO ORDERED.

DATED:     Honolulu, Hawaii, June 9 , 2004.

HELEN GILLMOR
United States District Judge

United States of America v. Isileli Latu, Cr. 02-00174 HG-02; Cr. 02-00542 HG; Order Denying Defendant's Motion to Suppress Evidence

31